May it please the Court, Charles Corey for Mr. Vasquez and Mr. Renteria. This case is all about the Sixth Amendment and the right to a trial by an impartial jury. These two men did not have an impartial jury, and they certainly had a biased foreman. Referring to the case that was argued earlier, the first case, the courts was dealing with, did that show that the I.J., the immigration judge, was biased? We don't have to worry about it here. What else would prompt a foreman of a jury to withhold the jury instructions when they were specifically requested by jurors? Let me ask you this, sir. Did the trial judge in the courtroom before the jury was required to begin its deliberations, did he read the instructions out loud to them? He read them out loud. He read them out loud, and he sent a copy back. Is that right? One copy for 12 jurors. For 12 jurors. And the jurors did not ask any questions during deliberations? Did they send in any questions to the judge? No. Okay. And how long did the deliberations last? That I don't have at my fingertips. I don't have that how long it lasted. It was within one day, though, was it not? You know, Your Honor, I didn't focus on that because I was so outraged at what the foreman did. And I know what this word means. It's outrage. It's outrageous. There's no other word for it. Did you participate in the trial? No, I did the appeal in the Court of Appeal, and I took it all the way up. And I couldn't believe that it wasn't going to be reversed before. I can't believe I'm here. I took this case pro bono, as a sole practitioner, because I was so upset. And I thanked the Court for appointing me in the Ninth Circuit, but that's when I got appointed. Mr. Curry. Yes, sir. Please put aside your outrage and look at this in a professional and cool manner. I'll try to, Your Honor. I'll really try. Well, it'll only help you if you do, because when individual pique enters into the argument, very often on appeal it shuts the appreciation down on the part of the appellate judge. I certainly don't mean to do that. I thought I said my outrage in a controlled voice. Let me ask you this. Yes. We have to apply the law here. You're talking about the Sixth Amendment. Yes, sir. You're talking, it's an MPA case. You have to show that there's established by the Supreme Court of the United States as to the right, Sixth Amendment right, to impeach a verdict by declarations or evidence, not of any external influence on the jury, but by what happened in the jury room. Now, as I understand it, in California under Evidence Code 1150 or in the Supreme Court jurisprudence, you have to show that there was some outside influence on the jury. If you show that one of the jurors had a peculiar way of thinking or appreciating the evidence, that's not sufficient. What outside influence was brought to bear on this jury that constituted judicial misconduct and where is the evidence of that other than the affidavits of the two jurors regarding what the foreman did? 1150 of the Evidence Code states that it doesn't limit it to outside. It says it right here. I'm looking at page four of my reply brief. Either within events occurring either within or without the jury room. All right. But Tanner says that you have to have an extraneous influence on the jury because it's flatly prohibited. It flatly prohibits the admission of juror testimony to impeach a verdict. All right. Now, what is the external evidence? Is there any? Are you arguing that external evidence, external influence is not necessary? I'm saying that when the foreman of the jury does not permit the jurors, upon their request, to look at the jury instructions, especially after he said something different than they heard, and he did, that that's misconduct and that misconduct is the rule. And that this court's, it's not, the source isn't important as the nature of it describes misconduct. Because the source is an artificial definition. And the Tanner case, that case was where somebody was really upset about a party. The jury partied. And he said something, that ain't no way to run a jury. And that's all he said. That's all. That's all the Supreme Court had. We have much more than this. That's what he said. Can we agree on one thing? There is no, nothing in the record showing any evidence of an extraneous influence on this jury as opposed to the jury foreman's misinterpretation. No, we can't agree. We can't agree. I won't agree with that. What is the evidence of extraneous influence on this jury? It's a foreman who puts his hands on the scales of justice and says, I refuse to give you these jury instructions that you want. That's extraneous. That's extraneous. Yes, sir. It happens in the jury room. It doesn't. It happens by the foreman, but it's extraneous. It's extraneous from the law. Oh, I see. It's outside the law. It's illegal activity on the part of a foreman, of a juror. It's illegal. So we understand each other. That is the only evidence of extraneous influence to which you can point. And also, yes, that's it. That's it. Counsel, it's Judge Gould. Yes, Your Honor. I have a question for you. I've been troubled by this case a bit, and maybe for some of the same reasons you're concerned on behalf of your client. But it is an AEDPA case, and Tanner, the Supreme Court's precedent, is like a big rock that has to be shoved up a big hill. So in other words, we could not give relief, I don't think, unless we thought that the state appellate determination was an objectively unreasonable interpretation of Tanner. That's my understanding of the law that governs us under the AEDPA. It can't even be whether we would say we would read Tanner differently in a direct appeal in the federal court system. If it comes from the state court, we would have to say that's objectively unreasonable, the way the state court dealt with Tanner. And given the language of Tanner, that seems to me to hone in on the language that Judge Beyer was asking about and that you've answered on. So I would just like you to elaborate on that. That is, can it be said that the statement of law by the foreman that any failure to intervene would be aiding and abetting, that that is, quote, extraneous, close quotes, you know, in the sense that it's extraneous to the law, even though it doesn't come from outside the courtroom, or is that just an argument that's foreclosed by the Tanner precedent, in which case I think you lose? Let me speak to that, Your Honor. It is extraneous. It's part of the illegality of a biased foreman. That's my argument. We have a biased juror, and he expressed it with his own extraneous version of the law and then prevented the jurors from correcting him by withholding the jury instructions. Bias is what we're talking about. And Tanner is not an obstacle to that. Irwin v. Dowd is my Supreme Court case, not Tanner. Irwin v. Dowd is the seminal Supreme Court case on which I rely in my briefs for that prong of AEDPA, that prong, an unreasonable application of Supreme Court law. But there's another prong of AEDPA that I haven't even gotten to, and the State Court of Appeal really violated that prong by doing an unreasonable determination of the facts in this case, by saying, well, we assume that the jurors had access to these jury instructions, and that's an absolute contradiction to what the declarations are. Do I have to do both of the AEDPA prongs to win in this court? I don't think so. I don't think so. I think one is enough. I think I've got both. I think I've got both because of Irwin v. Dowd and this unreasonable determination of the facts. Let me ask you, under California law, does the trial judge have to send the written instructions back to the jury room? No, he doesn't. But that still doesn't answer – I understand where you're going, Judge Hart. I'm not going anywhere. Okay, but the point is – maybe I shouldn't say that. I'm guessing at where you're going. The point is bias of the foreman. How can anyone say that he wasn't biased? Can I suggest to you that he was in error, he was mistaken, but does that establish bias? If we didn't have the withholding of the jury instructions, I'd have a harder time. He makes it easy. No. He says something. He gave them to juror number seven when she insisted on them. One juror. One juror. And is there any indication that juror could not share the instructions with the other one? The declarations. The declarations. She gave them to one juror. But is there anything in the declarations saying the foreman said to the juror, now you can read them, but I don't want you to talk about them with anybody else and I don't want you to show them to anybody else. No. I don't think I need that. The answer is no. The answer is no, but these two jurors said they did not get the instructions because he would not give it to them and that he was a control freak. That's enough for bias. Counsel, did the foreman, we know the judge read the instructions to the jury. Did the foreman also read them to the jury or? Yes, he did. Did he not? No, he did. He did. Can I speak to that issue of reading? Everybody learns things differently. Some people can hear something and they've got it. Some people have to see it in writing. Those jurors had the right to see these jury instructions in writing, especially when what the foreman said contradicted what they heard. That's the bias. That's the bias. Why did he refuse to give these jury instructions to the jurors that wanted them? Why? Why? Because he wanted a result and he got the result. That's bias. There's no other answer. Now, I'm going to run. I forgot to push my stopwatch. I think I better hold some time. All right. Thank you. Thank you. Good morning. May it please the Court. Douglas Danzig, Deputy Attorney General, on behalf of Respondent Appellee. The first thing I'd like to do is correct something the counsel said. He stated that the State Court of Appeal declared that the foreperson shared the instructions with the jury. The State Court of Appeal said nothing of the sort. They said that it was reasonable to assume that any misunderstanding was clarified by reference to the instructions, and that's simply a misstatement of what the State Court had said. Turning to something else, and particularly to what Judge Gould brought up, there is simply nothing in the law that defines extraneous improper influences in the manner in which petitioners suggest. All of the cases go to outside evidence, something that comes from outside the jury room, outside the evidence that was presented to the court, and that that is improper and cannot be considered. It's never been suggested that this extends to extraneous, in the sense that procedure wasn't followed in a jury room the way it's normally understood to be followed. Counsel, I've got a question for you, if I may. Yes, Judge. And as I said earlier, I think Tanner is a weighty precedent here. But if a controlling foreman is causing the jury to deliberate on a standard that is not the law in the written instructions, which might not be the case, but let's assume that's the case, that an influential juror, influential foreman, is causing the jury to deliberate on a standard that is extraneous to what's in the written instructions. Maybe there isn't law saying that's an extraneous influence, but how is that different from a case where a gangster says, quit the defendant or you'll be shot? So if you have evidence of that, that's extraneous. The gangster's outside the courtroom and says it, but it gets the juror to decide based on something other than the instructions and the evidence. But here, again, if the foreman is misstating a standard in the instructions and not giving the instructions to the jurors, why can't that be viewed as extraneous? That's my question. Well, Judge, I think that that bears in directly on what California Evidence Code 1150  The hypothetical that you offer goes directly to the deliberative process, the mental deliberative process in the jury room, in the deliberations room. The example that you offer, if he's advocating an improper understanding of the law, that's the very reason that other jurors are there, is in order to correct him or provide their own take on what the law is. And that is precisely what the statutes seek to preclude from being used to impeach a verdict. It's the only way in which free exchange of ideas is encouraged and allowed in a deliberations room. If the hypothetical you're offering were enough to impeach a verdict, eventually the process would evolve into where people in the deliberations room would be reluctant to say anything, to share any of their sense of what the law says, and arguably even to the extent that they would be reluctant to share what their interpretations of the facts are. I did want to correct one other thing, or address one other question that Judge Bailiff raised, because I think it's important to be sure that the record is fully understood. The question was posed whether there was anything else in the record that suggests there was an outside influence. And I don't think that what I'm about to cite to the court directly constitutes an outside influence, but I think it's fair to acknowledge the fact that one of the declarations did declare there seems to be an overall attitude that because they were in a gang, they were guilty. Does that connect into Petitioner's argument regarding bias? I don't believe so. He's asked rhetorically a couple of times, what else could it be? Well, it could be the very reason that the two declarations identified. He was a control freak. Some people are. It doesn't mean that they're biased. It just means that they are, once put in a position of authority, they seek to control the situation. And that's what he did. But even to the extent that he did try to control that situation, as the record makes clear, not only were the instructions read to the jury by the court in open court, the written instructions were provided to the jury in the deliberations room. They were also showed to juror number seven, and everyone has acknowledged, except Petitioner, well, actually he did this morning, that the instructions were also read to the other deliberating jurors during deliberations. In fact, the district court judge here even went so far as to acknowledge, pardon me, I think the magistrate judge went so far as to acknowledge that defense counsel conceded on at least two occasions that the instructions were read and distributed. In one case, one implication was that they were distributed to the other jurors, but that was given little probative value by the magistrate judge, and I don't suggest that it necessarily decides this case. Counsel, your colleague in advocacy said in response to my question, yes, they were read to the jury by the foreman. That's what he said. Yes, sir. And we also know that the judge read them. So we know they've been read twice. So I don't think you have to raise that in the sense of arguing your opponent is saying they weren't read, because he said they were read, at least here. Now, what about the Dowd case, which your adversarial colleague cites and says it's his theory of his brief that what was done by the state court is an unreasonable application of the Dowd precedent. So put Tanner aside. How do you deal with Dowd? It simply doesn't rise to the ADPA standard. This has got to be something more than error. It's even got to be something more than clear error. This is something beyond that. The Supreme Court has declared it in a number of cases. And this would have to be objectively unreasonable. They never truly defined that term. But I think a fair definition of it is it has to be something that essentially most reasonable jurists would not believe that this could have been an interpretation that could have withstood the test of reason. And in this case, the state court interpreted extraneous and interpreted California Evidence Code 1150 in a manner which is consistent with how the law has been interpreted routinely in this area. So I don't see how it could ever rise to the level of being objectively unreasonable. And just to clarify one thing, Judge Gould, I thought I did acknowledge that my colleague in the advocacy did acknowledge this morning that the instructions were read to the jury by the foreperson. So I didn't mean to suggest that he wasn't acknowledging that fact. What were the facts in Erwin versus Dowd? What was the misconduct of the jury in that case? I don't recall, Your Honor. The last thing, though, that I would like to say is I think it's a fair thing to say that it's fairly common for jurors to misunderstand the law. The law is complicated. The instructions are in California. They just undergo a California criminal jury instructions have just undergone a complete revision. The whole purpose of instructions is to try to clarify what is very difficult for jurors to understand, in many cases, let alone laypersons. So the idea behind having a jury deliberations is so that there can be a balance amongst 12 voices to try to clarify, understand, and reach a reasonable application of what the law states and how to apply the facts to that. Let me ask you a question. The jury foreman had given a declaration saying, yes, I told the rest of the jurors that simply being there and not intervening in the fight was aiding and abetting. And I got that belief from my next-door neighbor, Prosecutor Smith, who told me that the week before that I was chosen as a foreman. That would be clearly an extraneous influence on the jury, wouldn't it? A classic example. Now, suppose that he were to give a declaration saying, as I sat there in the trial and in the jury room, I developed the idea myself that failure to intervene for these gang members meant aiding and abetting. Would that be different? Yes, it is. Because the latter example you used goes directly to the mental processes of the foreperson. So it's all right if he develops a wrong theory of law by himself. Not all right. But it's not a basis to impeach the verdict if he develops it by himself, but it is if he talks over the fence to his neighbor the week before. Yes, absolutely. And the reason is obvious, is because by citing to an outside source, in your hypothetical, a prosecutor, he is attempting not only to just say, this is my understanding of the law, what do you think? He's trying to say, it doesn't matter what you think. I have an expert that says better. Okay. And on that basis, unless the Court has further questions, I submit. We'll give you a minute, sir. Thank you. I just wanted to reiterate, I appreciate being appointed by this Court, because I did take the case pro bono, and I do try to control my outrage, but I understand what the Court was saying. Now, Estrada v. Scribner is a case of this district, Ninth Circuit Court of Appeals, the circuit, 512 F3D 1227, 2008, said it's not the source that matters. It's the nature of the information. That was a case in which, and it was a death penalty case, and the woman talked about, the juror talked about her own mother being murdered. That was all in the jury room. It was all in the jury room. And that was her life story. And it caused a reversal of that case. And this circuit said, it's the nature, and that makes sense, not the source. So, and also 1150, the evidence code doesn't talk about inside or outside. And the foreman never testified in this case to say anything that Judge Beyer could have said, he said, in those hypotheticals. Why? Because there was this cloak of secrecy, and none of the jurors, except those two, would allow themselves to be subpoenaed. They wouldn't allow it, and they have the right. They wouldn't talk. So we don't know what the foreman would have said. And finally, it's the bias. Irwin v. Dowd, that's the seminal case in which the Supreme Court of the United States said, there was no hope of getting an unbiased jury in the atmosphere that was created by this case. It was all about bias. My case is all about bias. Was Dowd a pretrial publicity case? Yes, sir. Like the Shepard case? Yes, sir. Is that right? Absolutely. Absolutely. But the point that I'm trying to hammer home is bias. We're talking about bias. Let me tell you, you have high moral standards. I hope so. I hope so and thank you. And if there are no other questions, I'll submit it. All right. We also appreciate your taking a pro bono assignment to help out our court and the justice system. Thank you, Your Honor. I appreciate that. I'm a sole practitioner. Thank you very much. Thank you, Mr. Reed. With that, the calendar has been completed and we stand adjourned. All rise. Questions, questions, sentence adjourned.
judges: Hart, Gould, Bea